Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 2698 | DATE | 8/9/2004 |
| CASE TITLE | United Bizjet Holdings vs. Gulfstream Aerospace | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. As stated at the outset, this Court is constrained to moot the only pending motion - - the one by which Gulfstream challenges certain aspects of the FAC - - by reason of Bizjet's filing of its SAC. (16-1) Under the circumstances, this Court will simply await further input from the litigants (including any submissions that either party may choose to tender along the lines suggested by this opinion).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 8/11/04 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | rbf docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 8/10/2004 date mailed notice | |
| SN | courtroom deputy's initials | 2004 AUG 10 PM 12:31 Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED BIZJET HOLDINGS, INC., )
)
    Plaintiff, )
)
v. ) No. 04 C 2698
)
GULFSTREAM AEROSPACE CORPORATION, )
et al., )
)
    Defendants. )

DOCKETED
AUG 1 1 2004

## MEMORANDUM OPINION AND ORDER

United BizJet Holdings, Inc. ("BizJet") has just filed a four-count Second Amended Complaint ("SAC") that supersedes, as a matter of law, its First Amended Complaint ("FAC"). By definition that moots the motion by Gulfstream Aerospace Corporation and Gulfstream Aerospace Limited Partnership (collectively denoted by the singular noun "Gulfstream") to dismiss FAC Counts III and IV. But because the corresponding counts in the new SAC present claims that raise questions similar (as to Count III) or identical (as to Count IV) to those posed by the FAC's counts, this memorandum opinion and order will examine the new claims from the perspectives advanced earlier by Gulfstream's motion and BizJet's response.

SAC Count III, like FAC Count III, states a claim sounding in unjust enrichment. Gulfstream had attacked the earlier statement of claim because, despite the permissibility of filing alternate claims as a matter of federal procedure (see Fed. R. Civ. P. 18(a)), a quasicontractual claim of unjust enrichment is



internally inconsistent with the assertion of an enforceable contract--and is hence impermissible (see, e.g., Goldstein v. CIBC World Markets Corp., 776 N.Y.S.2d 12, 14 (N.Y. App. Div. 2004); Clark-Fitzpatrick, Inc. v. Long Island R.R., 521 N.Y.S.2d 653, 656 (N.Y. 1987)).[1]

What BizJet has now done in the SAC is to eliminate, from Count III's incorporation by reference, all of the SAC's paragraphs before Count III's opening Paragraph 72 that mention any contractual relationship between BizJet and Gulfstream. That may or may not work because Count III ¶73 obviously begins in the middle (rather than at the beginning) of the story, so that the attempted bowdlerization may be viewed as unrealistic. But at least for the moment this Court will not disturb Count III, leaving it to Gulfstream to renew its objection (with appropriate support from the authorities) if it chooses.

As for SAC Count IV, it like FAC Count III seeks to set out an independent and stand-alone alternative claim based on an implied covenant of good faith and fair dealing (SAC ¶¶83-84). In that respect each side has called to its aid New York caselaw that appears to look in an opposite direction from the cases

---

[1] Although the Sales Agreements between the parties contain a choice of law provision designating recourse to New York law, it is possible that an extracontractual claim might perhaps look instead to the substantive law of the forum. No matter-- Illinois' unjust enrichment doctrine is identical to that stated in the text.

2

adduced by its adversary. Here, for example, is the Second Circuit's reading of New York law adduced by Gulfstream (<u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80, 81 (2d Cir. 2002)(citations and quotation marks omitted)):

> Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract.
>
> \*      \*      \*
>
> New York law, as discussed above, does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.

For its part BizJet cites to several cases of which this excerpt from <u>Fourth Branch Assocs. Mechanicville v. Niagara Mohawk Power Corp.</u>, 653 N.Y.S.2d 412, 416 (App. Div. 1997)(citations and internal quotation marks omitted) is typical:

> Implied in every contract is a covenant of good faith and faith dealing..., which is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.

It is frankly difficult to reconcile those quite disparate messages. But be that as it may, this Court, having reviewed the now-moot (but potentially reassertable) contentions of the parties, has been put in mind for the second time in as many weeks of one of Oscar Wilde's best-known bon mots:

> In this world there are only two tragedies. One is not

3

getting what one wants, and the other is getting it.[2]
What follows explains why the acceptance of BizJet's contention may well cut against it in this litigation.

It will be recalled that SAC ¶44 (like the predecessor versions of the Complaint) alleges:

> On Friday, March 22, 2002, UAL Corp. [BizJet's parent] announced that it would begin an orderly shutdown of BizJet.

Because neither side had submitted a copy of that announcement, this Court requested a copy of the press release, and BizJet's counsel was good enough to deliver it to this Court's chambers (see Ex. 1 to this opinion).[3] It was that announcement that triggered Gulfstream's prompt March 25 transmittal to BizJet of this notification (quoted in material part in SAC ¶45):

> In light of the public announcement by UAL Corporation that it is closing its wholly owned subsidiary, Avolar (a/k/a United BizJet Holdings, Inc.), Gulfstream Aerospace Corporation and Gulfstream Aerospace LP hereby exercise their right to terminate the Agreements in their entirety with respect to all Aircraft (as defined in the Agreements).

What BizJet seeks to assert in this lawsuit is that the unequivocal press release on which Gulfstream relied as the basis for its just-quoted termination notice did not satisfy this

---

[2] Quoted from Lady Windermere's Fan act III.

[3] It may well be, though BizJet's counsel was not sure on the subject, that a contemporaneous SEC filing might also have been made. Whether or not such was the case, the public nature of the announcement is undeniable.

4

provision of the contracts between the parties (Section 16.G of
the June 15, 2001 Sales Agreement and Section 18.G of the
September 27-28, 2001 Sales Agreement):

> In the event that Buyer, in its sole discretion,
> provides Gulfstream a written notice that Buyer is
> terminating or shutting down Buyer's fractional share
> aircraft program, then Gulfstream may, at its option,
> upon receiving such notice terminate this Agreement as
> to all remaining undelivered Aircraft which are not yet
> being remarketed at Buyer's prior request; provided,
> however, in no event will this Section 16.G be
> interpreted to be triggered by any spin-off of Buyer
> from its parent company, or any merger or consolidation
> of Buyer with any other entity.

And BizJet seeks to take advantage of its not having served that formal written notice by imposing contractual remarketing obligations on Gulfstream (SAC ¶¶25-32, 36-43, 50 and (comprising SAC Count II) 65-71)--obligations that would be extinguished if Gulfstream's March 25, 2002 notice of termination was legally effective.

It takes little thought to recognize that BizJet is seeking to stake out a position that relies on the notion that its own nonconformity to the literal language of the two contractual provisions (Sections 16.G and 18.G, respectively) has afforded it the opportunity to insist that the Sales Agreements remain sufficiently alive (though perhaps moribund) to allow it to burden Gulfstream with obligations whose very existence depended upon the contracts' continuing viability. But it must be said that if BizJet is right in its assertion as to the independent

5

existence of claims for breach of the implied covenants of good faith and fair dealing in the absence of a straight breach of contract claim, BizJet would appear to be hoist by its own petard.

As stated at the outset, this Court is constrained to moot the only pending motion--the one by which Gulfstream challenges certain aspects of the FAC--by reason of BizJet's filing of its SAC. Under the circumstances, this Court will simply await further input from the litigants (including any submissions that either party may choose to tender along the lines suggested by this opinion).

                                                */s/ Milton I. Shadur*
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: August 9, 2004

U N I T E D

Press releases | Advertising | Images | Contact

Home > Press Room > Press releases > Year 2002 > March > Press release

# Press release

Quick links:

Back to homepage

Planning Travel

Travel Support

Mileage Plus

About United

Worldwide Sites

## STATEMENT BY UAL CORPORATION REGARDING AVOLAR

CHICAGO, Mar. 22, 2002 - UAL Corporation (NYSE:UAL) announced today that the company was closing its wholly owned subsidiary, Avolar, which it launched last spring to capitalize on opportunities in the fast-growing fractional-ownership market.

In making the announcement, United CEO Jack Creighton said, "Since my arrival in October, we have explored every possible option that would have enabled UAL to benefit from its original investment in this subsidiary. Unfortunately, none of them proved financially viable in the current airline operating environment created by the downturn in the economy and exacerbated by the September 11 terrorist attacks. At this juncture, we believe closing the subsidiary is the most prudent move possible - one that protects United Airlines from further financial exposure, supports United's efforts to pursue its financial stability and recovery, and enables United to focus on its core competencies."

With the decision, UAL will begin an orderly shutdown of the operation. Customers who signed on for Avolar's fractional jet service are in the process of being notified of the closing.

"We greatly appreciate the tireless efforts and dedication of the employees who helped us launch this subsidiary," Creighton says. "They worked hard to bring the vision of Avolar to life, but were challenged by unfortunate and unexpected circumstances that even their best efforts couldn't overcome."

© 2004 United Air Lines, Inc.